```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )    CR No. 15-49
                                )
                                )    Washington, D.C.
      vs.                       )    May 5, 2015
                                )    2:40 p.m.
CORNELL JONES,                  )
                                )
          Defendant.            )
_____)


                 TRANSCRIPT OF STATUS CONFERENCE
             BEFORE THE HONORABLE RICHARD J. LEON
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Anthony D. Saler
                             US ATTORNEY'S OFFICE
                             Criminal Division
                             555 4th Street, NW
                             Washington, D.C. 20530
                             (202) 252-6971
                             anthony.saler@usdoj.gov




For the Defendant:           Bernard S. Grimm
                             THE LAW OFFCE OF BERNARD GRIMM
                             1627 I Street,NW
                             Suite 1100
                             Washington, D.C. 20006
                             (202)912-4888
                             bgrimm@grimmlawdc.com
```

APPEARANCES CONTINUED:

Court Reporter:                William P. Zaremba, RMR, CRR
                               Official Court Reporter
                               U.S. Courthouse
                               333 Constitution Avenue, NW
                               Room 6511
                               Washington, D.C. 20001
                               (202) 354-3249

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

```
1                      P R O C E E D I N G S
2              DEPUTY CLERK:  Please be seated come and order.
3              Your Honor, we have Criminal Action 15-49,
4    United States of America versus Cornell Jones.
5              Counsel, please approach the lectern and identify
6    yourselves for the record.
7              MR. SALER:  Good afternoon, Your Honor.
8    Anthony Saler for the United States.
9              THE COURT:  Welcome.
10             MR. GRIMM:  Good afternoon, Your Honor.
11   Bernard Grimm on behalf of Mr. Jones.
12             THE COURT:  Welcome.
13             All right, Mr. Saler, where are we with this case?
14             MR. SALER:  Your Honor, the United States filed a
15   one-count information, charging a violation of 26 U.S.C.
16   7201.  The parties have reached a plea agreement and are
17   ready to, after the initial appearance and the arraignment,
18   to set a plea date.
19             THE COURT:  Where's the plea agreement?
20             I haven't seen it.
21             MR. GRIMM:  Mr. Jones signed it, Your Honor.
22   And the Court's ECF said that today was the initial
23   appearance.  I don't know whether the Court wanted the
24   initial appearance and the plea today.
25             THE COURT:  No.  I never do that.
```

```
1              MR. GRIMM:  Very well.
2              THE COURT:  It's been a while since you've been in
3    this courtroom, Mr. Grimm.
4              MR. GRIMM:  I'm getting old, Your Honor.
5    It's slow.
6              THE COURT:  I know.  Your beard praised you.
7              I'll have to take a look at this.
8              He can enter a not-guilty plea today.
9              MR. SALER:  Your Honor, the government also has a
10   booking order that we would request that Your Honor sign.
11             THE COURT:  Sure.
12             MR. GRIMM:  Your Honor, if I could just raise
13   something with the Court.  The deputy marshal earlier today
14   said he had to take Mr. Jones into custody to book him.
15   Given the hour, I have Special Agent Juarez in the courtroom
16   here today.  Agent, if you could just stand.  He's willing
17   to meet with Mr. Jones tomorrow morning, early tomorrow
18   morning, probably at 8:00, to take him in to get him booked.
19             THE COURT:  Why is that necessary?  Why can't he
20   be booked today?
21             MR. GRIMM:  Because I don't want him -- if he's
22   goes down there this afternoon, I'm afraid it's just going
23   to take too long.  I talked to Agent Juarez about that, and
24   he agreed.
25             If the deputy can convince me or persuade me that
```

```
 1   it can be done in the normal course, that's fine.  But I'm
 2   just afraid, given the hour, that it might just --
 3              THE COURT:  Who's Agent Juarez?  He doesn't work
 4   for any federal agency, does he?
 5              MR. SALER:  Agent Juarez is an investigator with
 6   the U.S. Attorney's Office.
 7              THE COURT:  He works for the U.S. Attorney?
 8              MR. SALER:  Yes, Your Honor.
 9              THE COURT:  Juan Juarez?
10              MR. SALER:  Yes, Your Honor.
11              THE COURT:  Is that his name?
12              MR. SALER:  Yes.
13              THE COURT:  Yeah.
14              And Mr. Bradley points out we have a standard
15   procedure for booking the marshals.  So I'm going to have to
16   follow the standard procedure, unless there's some good
17   reason to do otherwise.  I don't know what that would be.
18              MR. GRIMM:  All right, Your Honor.  I'm fine.
19              THE COURT:  So what kind of plea is this?
20   It's not a C plea, I hope.
21              MR. SALER:  It is not a C plea, Your Honor.
22   The government does agree to cap its allocution on 36
23   months.
24              The stipulated guideline range is 31 to 41 months.
25              THE COURT:  Tax division bless this?
```

```
1          MR. SALER:  Yes, Your Honor.  It's signed off by
2   the tax division.
3          THE COURT:  Does this represent that he will not
4   be charged any further by the tax division?
5          MR. SALER:  Yes, Your Honor.
6          THE COURT:  Do you have a letter from the
7   Assistant Attorney General of the tax division to that
8   effect?
9          MR. SALER:  I do not, Your Honor.
10         THE COURT:  You need one.  You'll need one to be
11  part of the plea.
12         A large amount of money, very large amount of
13  money.
14         What was he doing turning this kind of money?
15  What kind of work, Mr. Saler?
16         MR. SALER:  Well, as outlined in the Statement of
17  Offense, the defendant derived income from the sale of real
18  property in the District of Columbia, from consulting
19  payments, and also from an organization called Miracle
20  Hands.
21         THE COURT:  Speak up.  I can't hear you.
22         MR. SALER:  As outlined in the Statement of
23  Offense, the defendant derived income through a corporation
24  called WFJ, which owned real estate in the
25  District of Columbia, commercial real estate.
```

```
 1              He also received money from consulting payments.
 2   And he also received --
 3              THE COURT:  Consulting.  What kind of consulting?
 4              MR. SALER:  The consulting payments was -- were
 5   purportedly for -- for advice given to a strip club and the
 6   new owners of a strip club in the District of Columbia.
 7              THE COURT:  Advice about what?
 8              MR. SALER:  Both, Your Honor, in the Statement of
 9   Offense.
10              Part of the stipulated facts is that no consulting
11   was, in fact, done, and that it was a pretext to provide
12   additional money to the defendant for the sale of the
13   property.
14              THE COURT:  Now, what was this organization you
15   mentioned?
16              MR. SALER:  He was the -- the defendant controlled
17   a corporation called WFJ, Incorporated.
18              THE COURT:  What did they do?
19              MR. SALER:  They owned commercial real estate in
20   the District of Columbia.
21              THE COURT:  That's all spelled out in here, huh?
22              MR. SALER:  It is, Your Honor.
23              THE COURT:  I'll take a look at it.  I may or may
24   not approve of it.  We'll set a status hearing in a few
25   weeks after I've had a chance to review it.
```

```
1                Your client can come up and enter a plea of not
2    guilty.
3                MR. GRIMM:  Yes, Your Honor.
4                THE COURT:  That's fine.
5                THE DEFENDANT:  Good afternoon, Your Honor.
6                THE COURT:  Good afternoon.
7                DEPUTY CLERK:  Mr. Jones.
8                THE DEFENDANT:  Yes.
9                DEPUTY CLERK:  On April 6th, 2015, an information
10   was filed against you charging you with one count, attempt
11   to evade or defeat taxes.
12               Do you waive formal reading of the information,
13   and how do you wish to plea?
14               THE DEFENDANT:  Guilty.
15               MR. SALER:  It's -- yeah.  We'd waive a formal --
16               THE COURT:  Please speak up.
17               MR. GRIMM:  We would waive formal reading, enter a
18   plea of not guilty.
19               He's going to ultimately enter a plea of guilty to
20   that, provided the Court accepts that.
21               THE COURT:  All right.
22               So for the record to be perfectly clear,
23   Mr. Grimm, your client is entering a plea of not guilty
24   today; is that correct?
25               MR. GRIMM:  Yes, Your Honor.
```

9

```
1                  THE COURT:  Very good.
2                  Do you agree with that, sir?
3                  THE DEFENDANT:  Yes.  I'm trusting Mr. Grimm's
4       counseling.
5                  THE COURT:  All right.  We'll have a status
6       hearing on this case on the 19th, two weeks from now, at
7       3:00.  By then, I'll have had a chance to review this, these
8       materials.  If I have any issues, we can address them that
9       day.
10                 MR. GRIMM:  Your Honor, can I impose on the Court?
11      Is the 21st available to the Court?
12                 THE COURT:  Nope.  Out of town.
13                 MR. GRIMM:  3:00.  Thank you.
14                 THE COURT:  19th?
15                 MR. GRIMM:  Yes, sir.
16                 THE COURT:  What else you got?
17                 What's the government's position on terms of
18      release?
19                 MR. SALER:  Your Honor, the government asked that
20      the defendant be instructed to turn his passport over to
21      pretrial within 24 hours; that he remain within Maryland,
22      the District of Columbia, or Virginia; if he travels outside
23      those three states, that he get the approval of pretrial and
24      that he report by phone once per week to pretrial.
25                 THE COURT:  What else have you got, Mr. Saler?
```

1    MR. SALER: I believe that's it, Your Honor.
2 Just if we could get the booking order.
3    THE COURT: Well, this booking order is no good,
4 because this is Mr. Juarez. We're not doing that.
5    The U.S. Marshals are going to book him. Standard
6 practice of the Court. So this one is of no value.
7    MR. SALER: Your Honor, that's a separate booking
8 procedure through FPD, as opposed to just through the
9 U.S. Marshals.
10    THE COURT: Mr. Bradley was just explaining to the
11 Court that we have an arrangement with the U.S. Marshals
12 that they do the booking.
13    MR. SALER: That's fine, Your Honor.
14    THE COURT: That's the standard practice of our
15 Court. I'm not going to vary from it unless there's a good
16 reason to it.
17    It's not even 3:00. I have no reason to think he
18 can't be booked today.
19    DEPUTY CLERK: Mr. Jones, can you come forward,
20 please.
21    Mr. Jones, you are to report back to this
22 courtroom on May 19th -- this courtroom number is 18 -- at
23 3:00.
24    You are not allowed to travel outside the DMV area
25 without permission. You are to surrender your passport to

```
 1  the pretrial services, and you're to call pretrial service
 2  weekly by phone.  And here's the number to call.
 3             Sign right here.  That's what you're agreeing to.
 4             Mr. Jones, if I could get you to raise your right
 5  hand.
 6             (Defendant is placed under oath.)
 7             DEPUTY CLERK:  All right.  I think we're done now.
 8             THE COURT:  All right.  Did the government provide
 9  any discovery materials to Mr. Jones' counsel?
10             MR. SALER:  Yes, Your Honor.
11             THE COURT:  Was there Brady material that was
12  provided?
13             MR. SALER:  The government is not aware of any
14  Brady material, Your Honor.
15             THE COURT:  How about Jencks?
16             MR. SALER:  There were no statements by the
17  defendant.
18             THE COURT:  It was mostly just documents?
19             MR. SALER:  Yes, Your Honor.
20             THE COURT:  Is this investigated by a grand jury?
21             MR. SALER:  Yes, Your Honor.
22             THE COURT:  All right.
23             MR. GRIMM:  Your Honor, I met with Mr. Saler on
24  numerous occasions.  He's had open-file discovery practice
25  in his office, and I've been able to actually go there with
```

1 Mr. Jones. And Mr. Jones has been able to ask Mr. Saler
2 questions about the investigation himself.
3         THE COURT: All right. See you in two weeks.
4         DEPUTY CLERK: All rise.
5         This Honorable Court now stands in reason until
6 the return of court.
7                 C E R T I F I C A T E
8         I, William P. Zaremba, RMR, CRR, certify that
9 the foregoing is a correct transcript from the record of
10 proceedings in the above-titled matter.
11
12
13
14 Date: June 22, 2015_____ /S/__William P. Zaremba_____
15                               William P. Zaremba, RMR, CRR
16
17
18
19
20
21
22
23
24
25