```
            IN THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )   CR No. 15-49
                               )
                               )   Washington, D.C.
     vs.                       )   September 4, 2015
                               )   12:15 p.m.
CORNELL JONES,                 )
                               )
          Defendant.           )
_____)


               TRANSCRIPT OF STATUS CONFERENCE
           BEFORE THE HONORABLE RICHARD J. LEON
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        Anthony D. Saler
                           Michael K. Atkinson
                           Kenneth C. Vert
                           U.S. ATTORNEY'S OFFICE
                           Criminal Division
                           555 4th Street, NW
                           Washington, D.C. 20530
                           (202) 252-6971
                           anthony.saler@usdoj.gov

                           Kenneth C. Vert
                           U.S DEPARTMENT OF JUSTICE
                           Tax Division
                           P.O. Box 972
                           Washington, D.C. 20044
                           (202) 305-9792
                           Kenneth.C.Vert@usdoj.gov
```

```
APPEARANCES CONTINUED:

For the Defendant:        Bernard S. Grimm
                          THE LAW OFFCE OF BERNARD GRIMM
                          1627 I Street, NW
                          Suite 1100
                          Washington, D.C. 20006
                          (202) 912-4888
                          bgrimm@grimmlawdc.com
```

APPEARANCES CONTINUED:

Court Reporter:            William P. Zaremba, RMR, CRR
                           Official Court Reporter
                           U.S. Courthouse
                           333 Constitution Avenue, NW
                           Room 6511
                           Washington, D.C. 20001
                           (202) 354-3249

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

```
1                    P R O C E E D I N G S
2              DEPUTY CLERK:  Your Honor, we have Criminal Action
3    15-49, the United States of America verse Cornell Jones.
4              Counsel, please approach the lectern and identify
5    yourselves for the record.
6              MR. SALER:  Good afternoon, Your Honor.
7    Anthony Saler for the United States.
8              And with me is AUSA Michael Atkinson and
9    Kenneth Vert of the DOJ Tax Division.
10             THE COURT:  Who's with the tax division?
11             MR. VERT:  I am, Your Honor.
12             THE COURT:  What your position over there?
13             MR. VERT:  Trial attorney.
14             THE COURT:  Okay.
15             MR. GRIMM:  Sorry to interrupt.  Bernard Grimm on
16   behalf of Mr. Jones.
17             THE COURT:  Thank you, Mr. Grimm.
18             Mr. Saler, was the defendant debriefed in
19   connection with his plea negotiations?
20             MR. SALER:  There was meetings between the defense
21   and the prosecution.
22             THE COURT:  Did he answer questions from the
23   government?
24             MR. SALER:  He cooperated in terms of helping us
25   identify his tax loss.
```

```
1                THE COURT:  I think that's a yes.
2                Is that a yes?  Did he answer questions?
3                MR. SALER:  Yes, Your Honor.
4                THE COURT:  IRS agents ask him questions?
5                MR. SALER:  Yes, Your Honor.
6                THE COURT:  You asked him questions?
7                MR. SALER:  I did.
8                THE COURT:  Okay.  So let me ask you some
9    questions.  When did he start becoming the managing member
10   of WFJ?
11               MR. SALER:  At its inception, Your Honor.
12               THE COURT:  When was that?
13               MR. SALER:  I believe it was 2002.
14               THE COURT:  '2.  What did he do before 2002?
15               MR. SALER:  I'm not aware of what his employment
16   was before 2002.
17               THE COURT:  You didn't ask?
18               MR. SALER:  No.  We did not ask his employment
19   before 2002.
20               THE COURT:  Do you know what his criminal history
21   is?
22               MR. SALER:  Yes, I am aware of his criminal
23   history, Your Honor.
24               THE COURT:  What was his last conviction?
25               MR. SALER:  It was 1985.
```

```
 1                THE COURT:  1985.  What was it for?
 2                MR. SALER:  For drug trafficking.
 3                THE COURT:  Drug trafficking.  What kind of drugs?
 4                MR. SALER:  Cocaine.
 5                THE COURT:  Cocaine.
 6          And was it a conspiracy he was involved in?
 7                MR. SALER:  It was, Your Honor.
 8                THE COURT:  Uh-huh.  And was it a large cocaine
 9   distribution organization?
10                MR. SALER:  It was, Your Honor.
11                THE COURT:  It was.
12          And he was prosecuted in Superior Court or this
13   Court?
14                MR. SALER:  He was prosecuted in the District
15   Court.
16                THE COURT:  U.S. District Court.  Which judge;
17   do you remember?
18                MR. SALER:  I don't remember, Your Honor.
19                THE COURT:  You don't remember.
20          What sentence did he get?
21                MR. SALER:  I believe he had an indeterminate
22   sentence of -- it was a range, Your Honor.  I know he ended
23   up being released from jail in 1995.
24                THE COURT:  So he served at least ten years in
25   prison?
```

1          MR. SALER:  Yes, Your Honor.
2          THE COURT:  So '85 to 95.
3          Now, we got a period of '95 to '02.
4   You're telling this Court that you made no inquiry to what
5   he did in terms of working between '95 and '02?
6          MR. SALER:  Yes, Your Honor.
7          THE COURT:  Did he pay taxes during '95 to '02?
8   You must have inquired about that.
9          MR. SALER:  He did not file tax returns,
10  Your Honor.
11         THE COURT:  He did not.
12         So where is it that you believe he got the money
13  in '02 to start a corporation that has real estate holdings
14  close to two million dollars?  Where did you think that came
15  from?
16         MR. SALER:  I believe it was a loan, Your Honor.
17         THE COURT:  A loan.  A loan from who?
18         MR. SALER:  I don't know, Your Honor, or I don't
19  remember.
20         THE COURT:  Was it a bank?  Because to get a bank
21  loan, you have to show tax returns, right?
22         MR. SALER:  Yes, Your Honor.
23         THE COURT:  You have to show sources of income,
24  right?  So it wasn't from a bank, was it?
25         MR. SALER:  I don't believe so, Your Honor.  I --

1   I know it was a lender.
2           THE COURT:  Did you satisfy yourself when you
3   asked him questions that the sources were not narcotics?
4           MR. SALER:  We did not question him about that,
5   Your Honor.
6           THE COURT:  So basically, you just let it go
7   unknown as to what the sources of his income were between
8   '95 and '02 when he started a corporation that had real
9   estate holding in excess of a million dollars.  Have I got
10  that right?
11          MR. SALER:  We did not inquire about his sources
12  of income prior to the --
13          THE COURT:  Was it because you didn't care, you
14  weren't interested, it wasn't relevant?  What was your
15  reasoning for why you didn't inquire?
16          MR. SALER:  Your Honor, this investigation is
17  based on tax evasion during, from the 2008 to 2013 years.
18  So we focused on --
19          THE COURT:  Have you ever done tax evasion
20  prosecutions before, sir?
21          MR. SALER:  I've done one, Your Honor.
22          THE COURT:  One other.  What kind of case was it,
23  failure to file?
24          MR. SALER:  It was a 7201 and a failure to pay
25  over.

1    THE COURT:  Tax evasion.
2    Folks over in the tax division do
3 sources-of-income type investigations all the time.
4 Have you ever done a source-of-income type investigation?
5    MR. SALER:  Yes, Your Honor.
6    THE COURT:  But here, it didn't matter to you?
7    MR. SALER:  Your Honor, it's not that it didn't
8 matter.  Our focus was on conduct that we had records on,
9 and that was within a statute of limitations.
10   THE COURT:  Who was the loan from?
11   MR. SALER:  I don't -- I don't know right now,
12 Your Honor.
13   THE COURT:  Do you have notes somewhere?
14   MR. SALER:  No.  We would have obtained it from
15 property records as to who the mortgagee was.
16   THE COURT:  I didn't ask you who the mortgagee
17 was.  I'm asking you, who gave this defendant over a million
18 dollars to purchase a property that is the basis of a
19 corporation, incorporating in the District of Columbia,
20 called WFJ, LLC?  What person or persons?
21   MR. SALER:  Your Honor, I can't say for certain,
22 but I believe it may have been a trust, the Wasserman Trust.
23 But I would have to look at may records.
24   THE COURT:  What is the Wasserman Trust?  Because
25 I've never heard of it.  I don't know what that is.

1   MR. SALER: I don't have that information in front
2   of me, Your Honor.
3   THE COURT: Okay. I'll tell you what. I'm going
4   to give you a week to get some information, because there's
5   a lot of information that you obviously do not have.
6   Was there an IRS agent attached to this case to do
7   investigatory work?
8   MR. SALER: Yes, there was, Your Honor.
9   THE COURT: Then you might want to talk to him or
10  her or maybe one of each. I don't know. Okay?
11  But I'm trying to get some basic understanding,
12  basic, of where all this money is coming from and how it
13  ties into his income stream.
14  He's using this property somehow as a basis.
15  As I understand your statement of the relevant conduct, he
16  is leveraging this real estate holding to get a bogus
17  $28,000-a-month consulting contract; is that right?
18  It's bogus. He wasn't actually going to do any consulting.
19  MR. SALER: Correct, Your Honor.
20  THE COURT: So the people who were engaged in this
21  contract with him were engaged in a conspiracy?
22  MR. SALER: Not related to Mr. Jones' tax evasion,
23  Your Honor.
24  THE COURT: Not related to the tax evasion.
25  Well, who were they deceiving by having a bogus

1   $28,000-a-month arrangement with Mr. Jones?  The government
2   somehow?
3           MR. SALER:  Your Honor, I will have to -- that
4   would -- I would have to discuss grand jury information to
5   fully answer that question.
6           THE COURT:  I'm glad you said that because,
7   frankly, as a result of you're saying it, you've given me
8   different view of the case than I had prior to today.
9           I was under the impression prior to today that
10  this case had not been in the grand jury; that this
11  defendant came in with his counsel, provided you information
12  and cooperation in order to avoid being indicted; and that
13  the government was doing this arrangement, in part, to spare
14  it the burden and time of going through a grand jury
15  investigation.  So I was just under the impression there
16  wasn't any grand jury investigation in this case.
17          So you're now telling me there has been a grand
18  jury in this case?
19          MR. SALER:  The case was open in the grand jury,
20  Your Honor, that's correct.
21          THE COURT:  And that preceded his ever arriving on
22  the scene, right?
23          MR. SALER:  There was an open grand jury
24  investigation before we spoke to Mr. Jones.
25          THE COURT:  Okay.  And without saying who, had you

```
1    put witnesses in the grand jury yet at that point?
2             MR. SALER:  We had, Your Honor.
3             THE COURT:  And, again, I'm not asking you any
4    giving specifics, but is it an ongoing grand jury
5    investigation?
6             MR. SALER:  There's an ongoing, I would refer it
7    to as an umbrella grand jury investigation.
8             THE COURT:  Okay.  This is not a cooperation
9    agreement, obviously, right?
10            MR. SALER:  That's correct, Your Honor.
11            THE COURT:  But as I understand your arrangement
12   here, the defendant, in exchange for this plea agreement,
13   has a commitment from the Justice Department, and it
14   includes the tax division, not to prosecute his relative and
15   his significant other; is that correct?
16            MR. SALER:  That's correct, Your Honor.
17            THE COURT:  So the significant other is the woman
18   he lived with in Chevy Chase, right?
19            MR. SALER:  That's correct, Your Honor.
20            THE COURT:  And the relative is his son?
21            MR. SALER:  His father, Your Honor.
22            THE COURT:  His father.  Excuse me.  His father.
23            I'll tell you what.  Why don't you take the week
24   to figure out the answers to some of these questions, to the
25   extent you have them, you may not have them, and we'll
```

```
 1  reconvene next week and we'll continue our discussion.
 2              Also, I'd like to get, from probation -- and
 3  I'm going to inquire of probation to get me some further
 4  additional information with regard to his criminal history.
 5              You calculated it to be criminal history
 6  category 2, right?
 7              MR. SALER:  Yes, Your Honor.
 8              THE COURT:  All right.  I'm going to ask probation
 9  to give me their own assessment of that.
10              Are you available next Wednesday or Thursday?
11              (Pause)
12              THE COURT:  How about noon on Thursday, the 10th?
13              MR. SALER:  Mr. Vert is not available on Thursday.
14              THE COURT:  He doesn't need to be here.  It's not
15  necessary.
16              MR. SALER:  Your Honor, the tax division is a
17  signatory to the plea agreement, and they would like to see
18  this through.
19              THE COURT:  Well, they have other lawyers there.
20              I used to work there.  They have over 100 criminal
21  prosecutors there.
22              MR. SALER:  Well --
23              THE COURT:  If he can't be here, send someone
24  else.
25              MR. SALER:  Mr. Vert is the trial attorney who --
```

14

```
 1              THE COURT:  He's not on this indictment, on this
 2   information, is he?  It's your office.
 3              MR. SALER:  He's the signatory on the
 4   plea agreement, and he reviewed -- he's the one who
 5   initiated the review process for the plea.
 6              THE COURT:  September 15th, noon.
 7              Mr. Grimm, are you available that day?
 8              MR. GRIMM:  Yes, sir.
 9              THE COURT:  I'll ask probation to be here that day
10   as well.
11              MR. GRIMM:  Your Honor, can I address just some
12   observations that the Court had made just briefly?
13              Mr. Jones was, in fact, protecting his father but
14   not protecting in the way that the Court and I would talk
15   about it.  His father was ill, and his father died three
16   weeks go, so...
17              THE COURT:  Okay.  Thank you for clarifying that,
18   but I, you know --
19              MR. GRIMM:  I understand.
20              THE COURT:  I was just making clear that the deal
21   that was struck here, which the Court has to either approve
22   or not approve, included in the agreement by the government
23   that they would not prosecute his father or his significant
24   other.
25              MR. GRIMM:  Yes.  Yes, Your Honor.
```

1          Mr. Jones has agreed to meet with Mr. Saler and
2  answer all his questions, historical questions, going all
3  the way back to his criminal conviction and who he got the
4  loan with.  And he has all the paperwork on that loan and
5  will provide it to the government.
6          THE COURT:  Okay.  See you on the 15th.
7          DEPUTY CLERK:  All rise.
8          This Honorable Court now stands in recess until
9  return of court.
10          (Proceedings concluded at 12:30 p.m.)

C E R T I F I C A T E

      I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date: September 10, 2015\_\_\_\_   /S/\_\_William P. Zaremba\_\_\_\_\_

                               William P. Zaremba, RMR, CRR