IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )    CR No. 15-49
                                   )
                                   )    Washington, D.C.
          vs.                      )    October 8, 2015
                                   )    11:45 a.m.
CORNELL JONES,                     )
                                   )
          Defendant.               )
_____)


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          Anthony D. Saler
                             Michael K. Atkinson
                             U.S. ATTORNEY'S OFFICE
                             Criminal Division
                             555 4th Street, NW
                             Washington, D.C. 20530
                             (202) 252-6971
                             anthony.saler@usdoj.gov
                             michael.atkinson@usdoj.gov

                             Kenneth C. Vert
                             U.S DEPARTMENT OF JUSTICE
                             Tax Division
                             P.O. Box 972
                             Washington, D.C. 20044
                             (202) 305-9792
                             kenneth.c.vert@usdoj.gov

APPEARANCES CONTINUED:

For the Defendant:            Bernard S. Grimm
                              THE LAW OFFCE OF BERNARD GRIMM
                              1627 I Street, NW
                              Suite 1100
                              Washington, D.C. 20006
                              (202) 912-4888
                              bgrimm@grimmlawdc.com


Court Reporter:               William P. Zaremba, RMR, CRR
                              Official Court Reporter
                              U.S. Courthouse
                              333 Constitution Avenue, NW
                              Room 6511
                              Washington, D.C. 20001
                              (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

2          DEPUTY CLERK:  All rise.  This Honorable Court is

3   now in session.  The Honorable Judge Richard J. Leon

4   presiding.  God save the United States and this Honorable

5   Court.  Please be seated and come to order.

6          Your Honor, we have Criminal Action 15-49,

7   United States of America versus Cornell Jones.

8          Counsel, please approach the lectern and identify

9   yourselves for the record.

10          MR. SALER:  Good afternoon, Your Honor.

11   Anthony Saler for the United States.

12          And with me is Michael Atkinson from the

13   U.S. Attorney's Office and Ken Vert from the Tax Division.

14          THE COURT:  What's Mr. Atkinson's position?

15   What is he, the supervisor?

16          MR. SALER:  He is, Your Honor.

17          THE COURT:  What's his position?

18          MR. SALER:  He's the Chief of the Fraud and Public

19   Corruption section.

20          THE COURT:  I see.  Thank you.

21          MR. GRIMM:  Bernard Grimm on behalf of

22   Cornell Jones.

23          THE COURT:  Mr. Grimm, you can stay there.

24          MR. GRIMM:  I have some papers to get, Your Honor.

25          (Pause)

1          THE COURT:  It's your motion, Mr. Grimm.

2          MR. GRIMM:  Yes, Your Honor.  Thank you.

3          THE COURT:  You have ten minutes.

4          MR. GRIMM:  If you put yourself in the position of

5    Cornell Jones, this is an easy answer.

6          When someone says you're not fair, whatever you're

7    supposed to excel at -- you're a lacrosse player, you're a

8    vice president -- and the heart of what you do, somebody

9    says, we don't think you're doing it right and challenging

10   you, it's hard to step apart from that, I imagine, and be

11   objective.  I know it would be hard for me in sort of the

12   sports arena.

13         But for me, based on the law as it's dictated to

14   me and as I'm going to relay it to the Court, Your Honor,

15   it's not a close call.

16         And if the Court wants to get mad at me, maybe

17   it's me, maybe it's me, because the only other litigation

18   I had before the Court --

19         THE COURT:  Mr. Grimm, I don't get mad at lawyers.

20   I get frustrated with them.  I might be disappointed with

21   them.  But mad, not an option.

22         MR. GRIMM:  All right.  I don't know.  I read a

23   transcript from 12 years ago, and the Court seemed pretty

24   hot with me.

25         At any rate, Your Honor --

1          THE COURT:  Do you want to be specific?

2          MR. GRIMM:  United States versus Austin Sealy.

3          And I'll give the Court -- the Court's indulgence.

4          THE COURT:  I remember that case.

5          MR. GRIMM:  Yes.  04-184.

6          To make a long story short, Your Honor, a

7   defendant was convicted after a jury trial of possession

8   with intent to distribute marijuana, 497 grams, and there

9   was a gun that was thrown out the window.

10          The jury mistried on that, and the government came

11   back and dismissed -- the United States, Trena Carrington

12   was representing the government, dismissed those.

13          We came to sentencing.  The defendants' sentencing

14   Guidelines were 8 to 14 months.

15          The reason this is relevant, Your Honor, is

16   whenever you represent someone and you go to court and the

17   case is randomly assigned, your client's going to say,

18   "What do you know about this judge?  What's the book on this

19   guy?"

20          And the Court knows I'm -- you know, obviously,

21   I would relay it to the client in a much more sort of

22   professional way.

23          But the Court's been around the block before, and

24   the Court knows what I'm talking about.

25          I relayed to him Mr. Sealy's situation and the

1    trial in that matter and the fact that the jury mistried;

2    that there was room for cross-examination that the Court

3    allowed in the case.

4         But when it came to sentencing, his guidelines

5    were 8 to 14 months, and the government asked for a

6    two-level gun bump.  Even though the jury mistried on that,

7    it's allowable at sentencing.

8         However, the high end of his guidelines were 14

9    months.

10        This Court sentenced Mr. Sealy to a sentence of 31

11   months.  And the government had not filed a motion.

12   Probation had not sought an upward departure.  And that's

13   what I relayed to Mr. Jones.

14        So I don't know if it was Mr. Sealy or

15   I don't know if it was me, or I don't know if --

16   I don't know.  But I had an obligation to tell Mr. Jones.

17        But we come to this case and Mr. Jones is saying,

18   well, let's find out what's going on.

19        We come into the case, and I know the Court's read

20   my pleadings.  But right off the top, the Court is

21   suspicious of how the government brings this case.

22        And I've cited transcript references, and I've

23   attached references.

24        And for my record, Your Honor, I need the record

25   to be complete.

1           And I talked to Mr. Saler yesterday.

2           Because I've talked to probation.  And I'll tell

3    you, it was very frustrating.  I wasn't able to get someone

4    who knew anything about this until 5:15 yesterday.

5           But I'll need somebody from probation, because

6    they don't know who talked to Your Honor, whether it was an

7    e-mail, whether it was in person, because I need to complete

8    my record as to what was asked for.

9           And I'll just -- since I -- the Court is giving me

10   ten minutes, I'll need to jump to the issue, which is, the

11   Court put on the record last time that, "Mr. Grimm, I never

12   received anything from probation."

13          THE COURT:  I still have never received --

14          First of all, a PSR has never been prepared, which

15   is what Rule 32 prohibits a judge from reviewing prior to

16   accepting a plea, as you well know.

17          I have never requested a PSR, nor have I ever

18   received one.

19          I've never received a criminal history from the --

20   and I specifically directed them not to send me a criminal

21   history.

22          The most I've received from that office was an

23   initial reaction to the criminal history Category II, which

24   was the agreed upon criminal history category by both sides,

25   as to what the preliminary analysis was as to whether that's

1    an appropriate criminal history category.  And the answer

2    was, it looks like it's fine.

3              MR. GRIMM:  Right.

4              THE COURT:  But, you know, we have to do our -- we

5    have to do a criminal historical evaluation to know what it

6    actually is.

7              MR. GRIMM:  Right.

8              Well, United States versus Greg -- and there's

9    some other cases, Your Honor, that I cited -- said it is

10   immaterial whether it's a presentence investigation or a

11   criminal history request.

12             I understand where the Court is going with its --

13             THE COURT:  Well, I've never seen either one.

14             MR. GRIMM:  Right.  I don't --

15             THE COURT:  Either one.

16             MR. GRIMM:  All right.

17             Well, I don't know if this is counting against my

18   ten minutes or not, Your Honor.

19             But what I'm trying to tell the Court is, I don't

20   know what --

21             THE COURT:  You've put extensive pleadings on the

22   record, Mr. Grimm.  Make your point.

23             MR. GRIMM:  I'm trying to get there, but I'm --

24             THE COURT:  I'm listening; I'm waiting.

25             MR. GRIMM:  I'm rounding first, and second looks

1   good.

2          My point, Your Honor, is that the Court -- and I

3   never knew about it, I don't think the government counsel

4   knew about it, but the Court never received anything.

5          But the law is not, would I be in a better

6   position if the Court received a presentence investigation

7   that had a lot of short information, because what the cases

8   talk about is that you get a lot of hearsay, a lot of

9   unreliable information.  Like when we didn't get anything

10  from probation, the Court questioned Mr. Saler:  What about

11  Mr. Jones' criminal history category?  I never asked for it

12  to be done.  The government never asked for it to be done.

13  There was no question.  Nobody was confused about criminal

14  history.

15         In fact, Mr. Jones --

16         THE COURT:  Whoa, whoa, whoa.

17         Are you suggesting to this Court, Mr. Grimm, that

18  when you entered into a plea agreement with the government,

19  that neither you nor the government did your own homework as

20  to how you would come up with a calculated agreement between

21  the parties of a criminal history Category II in the terms

22  of the plea agreement?  Are you suggesting that you never

23  thought that through?

24         MR. GRIMM:  I don't know where the Court --

25         THE COURT:  Mr. Grimm, are you telling me you

1  never thought that through?

2          MR. GRIMM:  What is the Court accusing me of,

3  shirking my lawyering here?

4          THE COURT:  Of being --

5          MR. GRIMM:  Of being --

6          THE COURT:  Do you know what the word

7  "disingenuous" means, Mr. Grimm?

8          MR. GRIMM:  Yeah, I'll jump all over it.

9  I've been here for five hearings about disingenuous --

10         THE COURT:  You are being --

11         MR. GRIMM:  I've been here for five hearings.

12         THE COURT:  You, Mr. Grimm.

13         MR. GRIMM:  Let me finish my sentence, Your Honor.

14  And the Court won't me talk.

15         THE COURT:  Sir, sir, in this courtroom, when I

16  start, you stop.  This reporter can only take down one at a

17  time.

18         MR. GRIMM:  I was speaking.

19         THE COURT:  So you wait until I'm done.

20         Both the government and the defense did its own

21  homework, and I'm not inquiring into what that was, to make

22  the decision as to the criminal history category calculation

23  that they included in the terms of the plea agreement.

24         What you did in your discussions with your client

25  and what Mr. Saler did and the government did in its

1   consultations with whoever they check with, that's

2   between -- that's up to you two.  But this Court will not,

3   for a moment, sit here and assume that neither of you did

4   any homework.

5         And the mere fact that you may not have requested

6   from probation a criminal history calculation -- after all,

7   probation works for the Court, not for the defense counsel

8   and not for the government.  Probation works for the Court.

9         So the fact that you didn't request one from

10  probation or that the government didn't request one from

11  probation is immaterial.  It's irrelevant.

12        And it's a disingenuous argument for you to stand

13  there and say, we never requested anything, we never sought

14  anything out.  Don't make arguments like that.  Make

15  arguments that have a genuine basis to them.

16        MR. GRIMM:  13 years on the bench, I've heard from

17  the Court, 13 and a half, maybe 14, 30 years of practice.

18  I don't appreciate those accusations against someone like

19  me.  I break my neck working for my client.  And you can

20  find out if you hear me.

21        THE COURT:  The issue isn't whether you break your

22  neck, Mr. Grimm.  The issue is whether or not that was a

23  genuine argument.

24        MR. GRIMM:  Your Honor --

25        THE COURT:  Move to the next argument.

1        MR. GRIMM:  -- my only point was, it was right in

2   the plea agreement what his criminal history category was.

3   The Court said it's immaterial who asked for it.  But

4   I wanted the record to reflect that I didn't ask for it,

5   Your Honor.

6        In the transcripts, the Court asks about his

7   criminal history category, Mr. Saler; and specifically the

8   Court says:  "What about a conviction?"

9        And I'm paraphrasing:  "1985."

10        "What was it for?"

11        Mr. Saler says:  "Drugs."

12        The Court then responds:  "Large scale drug

13   organization.  Well, that doesn't feed to someone's criminal

14   history category."

15        That could only be bad news for somebody like

16   Cornell Jones, that the Court, being a neutral arbiter,

17   would know information like that and learn it from the

18   government.

19        THE COURT:  And that was a question.

20        MR. GRIMM:  Oh, no.  I --

21        THE COURT:  That was a question --

22        MR. GRIMM:  I understood.

23        THE COURT:  -- to Mr. Saler.

24        MR. GRIMM:  I understood.

25        THE COURT:  Do you know the difference between a

1    question and a statement?  Of course you do.  That was a

2    question, Mr. Grimm.

3            MR. GRIMM:  Your Honor, the transcript will say

4    "question" right there.  And I don't see why the Court needs

5    to humiliate me in front of my client.  This is not getting

6    us anywhere.

7            THE COURT:  I'm not trying to humiliate you.

8    The way you just said it on the record suggested that it

9    wasn't a question.

10           MR. GRIMM:  I'll just read from the transcript and

11   then we can go from there.

12           The Court said:  "Drug trafficking.  What kind of

13   drugs?"

14           Mr. Saler:  "Cocaine."

15           "Cocaine?  And was it a conspiracy that he was

16   involved in?"

17           "It was, Your Honor."

18           And the Court's answer:  And this is my problem,

19   Your Honor.  And this is something that would, perhaps,

20   pollute a court as to a defendant.

21           "And was it a large cocaine distribution

22   organization?"

23           And the record will reflect, this is the

24   information the Court's getting from the government, not

25   something the Court's being delivered and asked for.

1    This is something Mr. Saler is giving the government.

2           And I think when we all reflect, Mr. Saler, what

3    he did, he prosecuted in District Court, Superior Court.

4           The Court is finding out information.  At the next

5    hearing -- at the end of this hearing, the Court says:

6    "Well, there's a lot more questions that have to be

7    answered."

8           The Court didn't come back and say, I want to find

9    out what his criminal history category is.  The Court said,

10   "We're going to come back and continue these discussions."

11          We come back and there's discussions about

12   Mr. Jones' cooperation with the government.  And the Court

13   asked the government the question, and Mr. Saler answered:

14   "Well, I'd have to answer a grand jury question,

15   Your Honor."

16          And then the Court says:  "Well, that changes my

17   view of everything.  I didn't know this was a grand jury

18   question."

19          And on page 11, top of 12 of the last hearing;

20   at that hearing, Your Honor, my position is, is that the

21   Court shouldn't hold the view with respect to the defendant

22   one way or another, whether the defendant couldn't believe

23   that we were discussing in open court whether the

24   defendant --

25          THE COURT:  Do you understand the distinction

1  between accepting a plea and accepting a plea agreement?

2          MR. GRIMM:  Yes.  The government actually outlined

3  it in their memorandum quite clearly.

4          THE COURT:  All of those questions, Mr. Grimm, by

5  the Court related to its obligation under Rule 11 to

6  determine whether or not to accept the plea agreement.

7  Nothing to the plea.

8          I told you last time we had a hearing here if your

9  client wants to plead guilty separate and apart from the

10  plea agreement, I'm prepared to take it.  I was prepared the

11  last hearing.  I'm prepared today.

12          If he wants to plead guilty separate and apart

13  from the plea agreement, the Court will take the plea today,

14  right now.

15          MR. GRIMM:  I think if this was a knowing and

16  voluntary plea, I don't think the Court could stop him if he

17  wanted to plead guilty to the information straight-up

18  without any conditions.

19          THE COURT:  So we're on the same page.  We can do

20  a plea if you want to do one.

21          MR. GRIMM:  Right.

22          THE COURT:  You didn't want to do one at the last

23  hearing.

24          MR. GRIMM:  No.  Mr. Jones signed up the first

25  time around, Your Honor, and wanted to do a plea.  But for

1    all sorts of reasons, we're here today.

2              Here's my position, Your Honor.

3              The Court had asked probation -- and, again, it is

4    not whether the Court received the information.  The Court

5    said it didn't.  I'm not going behind that.

6              It's the appearance of impropriety.  It's the

7    question of whether Mr. Jones feels comfortable that this

8    Court is not getting information from Mr. Saler that could

9    be influencing the Court.

10             I understand --

11             THE COURT:  Mr. Grimm --

12             MR. GRIMM:  I heard what the Court said.

13             THE COURT:  Mr. Grimm, I went further than that.

14   I didn't say I didn't -- I didn't say I just didn't receive

15   it.  I said I directed probation not to send anything to me,

16   including its criminal history category calculation.

17             MR. GRIMM:  (Nodding head.)

18             THE COURT:  I directed them.

19             MR. GRIMM:  And, Your Honor, that's in the

20   transcript from the last time.

21             THE COURT:  Good.

22             MR. GRIMM:  It's unequivocal.

23             The Court did say, "The only thing I received,"

24   and I'm on the bottom of 11, top of 12.

25             And I just want to be careful.  "The Court has not

1    received anything from probation other than, quote/unquote,

2    an early assessment early on that they thought, at first

3    blush, Category II was accurate.  But I wanted them to

4    calculate it more accurately based on my comments on

5    September 4th.

6             "I have not received that from them, nor have I

7    received any information on this defendant's prior criminal

8    history.  Not received it.  Don't have it."

9             I don't know what an early assessment is.

10   I don't know what the Court received.  I don't know what was

11   passed on or not passed on.  It's pretty clear that what the

12   Court's saying is the Court directed them not to send

13   anything.

14            But I want the record to reflect that this early

15   assessment is not something I asked for.

16            And the information that the Court received from

17   Mr. Saler in this courtroom was nothing but negative

18   information about Mr. Jones.  Is he employed?  Did you

19   determine whether, between '95 and '02, whether the source

20   of any income he had were drugs -- was drug money,

21   narcotics.  And I don't see how, Your Honor, that goes to

22   the knowing and voluntary plea under Rule 11, is my

23   position.

24            The Court asked about people he was covering for.

25   The Court asked about the fact that Mr. Jones,

1    quote/unquote, is not going to be hiding the ball in this

2    courtroom with respect to initials in a plea agreement,

3    which I understand why the Court is going there.

4              But putting yourself in Mr. Jones' position,

5    Your Honor, you don't think that you're getting a fair shake

6    from the Court when the Court's questions, and the direction

7    of those questions, only has to do with the fact of what

8    kind of trouble Cornell Jones has been in in his past.

9    It doesn't feed into this criminal history category.

10   It feeds into the fact that he's simply a bad guy.

11             So the case law says and Rule 32 says -- and

12   if you go into the Advisory Committee notes -- that that

13   information they don't want going to the Court until after

14   the plea, because they don't want it influencing the Court,

15   because presentence reports contain a lot of unreliable

16   information.  They contain arrests that don't result in

17   dispositions or adjudications or convictions.

18             And I know the Court didn't receive it, but Greg

19   is pretty clear about the fact that not only, clearly,

20   shouldn't have been received but it shouldn't be asked for.

21             Lastly, Your Honor, I filed the motion to recuse.

22   This was discussed on September 14th at 9:00 in the morning

23   in my office, was when the first discussion was had and the

24   research was had.  So it wasn't a 10th inning issue in my

25   office.  In fact, it was probably discussed before then with

1    myself and Mr. Jones.

2              And the question is, with the direction the

3    Court's questions of Mr. Saler about Mr. Jones' background,

4    whether we were in front of the right court, Your Honor.

5              And these aren't easy calls for me, but based on

6    the law when I read it, it was beyond that.  I mean, it was

7    just getting worse for Mr. Jones each time, Your Honor.

8              I filed the motion -- and I'll close with this,

9    Your Honor.

10              I had filed the motion for recusal.  And the

11    courts -- and I'm paraphrasing -- and I'll read it if the

12    Court wants me to.

13              The Court said to Mr. Saler:  "Mr. Grimm's filed

14    this motion," quote/unquote.  "Well, couldn't we dispense

15    with a written brief.  Then you just make oral argument."

16              I'm under no illusions.  The Court is going to

17    deny the motion to recuse immediately.  Probably, at least

18    seem to me, right there, last time we were in front of the

19    Court on the 29th of September.

20              That indicates to me -- indicates, the Court says,

21    "Mr. Grimm, listen."  I'm being Mr. Grimm.  "Mr. Jones, I'm

22    being fair."  There's no reason for the government to reply.

23              But consistent with the way the Court had

24    extracted information from government counsel, and the

25    government liberally gave information to the Court about

1   large-scale drug conspiracies, and the fact that Mr. Jones

2   had been convicted before, had been unemployed.  And the

3   Court asked him questions about where that source, where

4   that money came.  That's all fine.  I've been doing this for

5   a long time.  But it's not fine before the plea.  And that's

6   why I had filed that motion with the Court.

7           The transcripts are -- the Court's indulgence,

8   Your Honor -- that Greg encases -- there's no case from the

9   D.C. Circuit that I could find.

10          But the cases talk about the fact that if there's

11  all different types of guilty plea -- not guilty pleas but

12  plea arrangements, there can be charge bargains, there can

13  be sentencing bargains, provided that Mr. Jones' plea is

14  knowing and intelligent and provided the Court is satisfied

15  that he's not under the influence of medication or he's been

16  properly advised.  Then the court has to take the plea.

17          My position, Your Honor, is, based on the law,

18  that all this information that government counsel provides

19  the Court shouldn't have been provided to the Court in this

20  early assessment, which I still don't know what it is, and

21  I'd like to get from probation on the record what it was

22  that they provided to the Court.

23          THE COURT:  Just out of curiosity, Mr. Grimm,

24  since you seem to have all the transcripts in front of you

25  and I have none --

1          MR. GRIMM:  Yes.

2          THE COURT:  -- when any of those questions that

3    you've been expressing concern about were asked by the

4    Court, did you object?

5          MR. GRIMM:  The questions?

6          THE COURT:  To any of those questions that you

7    have now been expressing concern about in prior hearings on

8    any of those occasions, did you raise an objection?

9          MR. GRIMM:  No, Your Honor, I sat there.

10          If Mr. Jones has an effective claim, he may have a

11   very good one.  The Court raises a good point.  So I sat

12   there.

13          I was hoping that the questions that were asked

14   and the answers that were coming, large-scale cocaine

15   organization -- and I have the words right, I just might not

16   have them in the right order.  Either way you spell it, it's

17   not good for Cornell Jones.

18          I should have been off my chair.  I was hoping

19   those were the last questions.

20          So the Court, under Strickland, is it prejudicial?

21   Certainly.

22          Is it going to affect the outcome?  I hope not,

23   but it seems to me that it probably will.

24          So the Court raises a good point.

25          If I could have two moments, Your Honor.

1          Lastly, Your Honor -- and I know I said that

2    before.

3          At the penultimate hearing on the 4th, where the

4    Court -- where there were a lot of back and forth between

5    the Court and Mr. Saler, I thought what the argument is is

6    the government counsel saying, well, the Court really wanted

7    to just figure out what Mr. Jones' criminal history was.

8          The Court says to Mr. Saler.  I'm on page 12, line

9    22:  "I'll tell you what.  Why don't you take the week to

10   figure out answers to some of these questions."

11         I mean, the questions that were unanswered.

12   Mr. Saler didn't know who the Judge was.  He didn't know the

13   exact amount of time Mr. Jones got.  I'm not sure why that

14   would be -- well, at any rate, I'll let some other court --

15   probably the Court of Appeals can decide that.

16         "To the extent you had them, you may not have

17   them" -- and I'm back on the transcript -- "we'll reconvene

18   next week and continue our discussion."

19         I don't think whether Mr. Jones is a criminal

20   history Category II or whether he's not, why that discussion

21   would have come up.

22         THE COURT:  That issue relates directly to the

23   Court's obligation to assess and decide whether the

24   agreement is in the public interest.

25         What criminal history category has been agreed to

1   between the parties and all other relevant parts of the

2   plea agreement are not only fair game for the Court to

3   evaluate, the Court is obligated to evaluate in order to

4   determine whether or not the charge bargain and/or

5   sentencing bargain, under Rule 11, is in the public's

6   interest.  The Court has an obligation to do that.

7           And I explained to you, as I've explained to every

8   defense counsel -- and you've had other pleas in front of me

9   over the years, Mr. Grimm --

10          MR. GRIMM:  Yes.

11          THE COURT:  And they went without a hitch.

12          And this Court's practice for a long time has

13  been, for a long time, to not accept pleas conditionally,

14  because the Court believes it's unfair to a defendant to do

15  so.  It pulls the rug out from under the defendant to wait

16  to see what the PSR says.  So the Court makes its assessment

17  on the front end so the defendant has the benefit of knowing

18  that when the day of sentencing comes, the Court is not

19  going to pull the rug out from under his feet.

20          In this case, the government filed a motion --

21  first time in my experience in this court.  I've taken well

22  over 300 pleas, maybe over 400.

23          First time since I've been on this court, the

24  government filed a motion asking me to take the plea first

25  and leave the assessment of the plea agreement till later.

1          I agreed to it.  At the last hearing, I said,

2    "Let's do the plea."  I'll put off, I'll defer the

3    assessment of the plea agreement.

4          You didn't want to go forward because you had

5    filed the motion that we've been hearing an argument on.

6          I thought we could truncate the process and save

7    everyone time to have just oral argument on the part of the

8    government and obviate the necessity of another delay for

9    over a week.  But the government said, Mr. Saler said they

10   wanted an opportunity to put their thoughts in writing.

11   So I gave them that.

12         But I've had motions much more monumental than

13   this in many, many, many, many cases, where we put aside the

14   burden of writing pleadings and just did it, decided it on

15   oral motions, oral argument.

16         This is not exactly the most complicated, the most

17   difficult issue the Court has heard based on oral arguments.

18   It's not even close, actually.

19         So, look, I get your point and I've let you go

20   well past ten minutes.

21         MR. GRIMM:  Yes, Your Honor.  Thank you.

22         THE COURT:  Well past.

23         MR. GRIMM:  Yes.

24         The issue of the motion, to pick up on where the

25   Court said, it's not routine for me.  In fact, I had never

1   filed one.  So it's not as if it's a Fourth Amendment motion

2   or an issue, a car stop, perhaps, that the Court has seen

3   before.  Thank you, Your Honor.

4              THE COURT:  Thank you, Mr. Grimm.

5              Mr. Saler, you can have -- hopefully, you won't

6   need ten minutes but...

7              MR. SALER:  Your Honor, the government's happy to

8   rely on its pleadings, unless the Court has specific

9   questions.

10             THE COURT:  Just for the sake of the record, state

11  the essence of why you don't believe that this is a

12  situation where the Court should recuse itself.

13             MR. SALER:  So, first, just to address the issues

14  of Rule 11 and whether the Court improperly inserted itself

15  into plea discussions.

16             At the time the parties appeared before the Court,

17  a plea agreement had already been agreed to.

18             THE COURT:  Consummated, right.

19             MR. SALER:  And the government has expressed the

20  Court's inquiry into the defendant's criminal history, his

21  employment, his past financial transactions, whether the

22  government had investigated if drug money was the source of

23  his purchase of the commercial real estate.

24             The government does believe that that was

25  inappropriate; however, it does not believe that the Court's

1    inquiry reaches the level of recusal, that it displays a

2    deep-seated favoritism or antagonism that would make an

3    objective observer appear that a fair judgment was

4    impossible.

5            And as to the issue of Rule 32, you know, the

6    Court has stated on the record that it did not receive a

7    criminal history from probation or any other information

8    from probation.  So the government believes that Rule 32 has

9    not been violated.

10           THE COURT:  Very good.  Thank you, Mr. Saler.

11           Based on the arguments that have been presented,

12   the briefs that have been filed, the Court concludes that

13   the motion for recusal should be denied.  It doesn't meet

14   the standard necessary under the circumstances.

15           Any inquiries that the Court made were inquiries

16   that were made pursuant to its obligation under Rule 11 to

17   assess the proposed plea agreement and whether or not it's

18   in the public interest.

19           The Court at no time received -- indeed, the Court

20   specifically directed the probation department not to send

21   it a criminal history evaluation, and not even to send it an

22   updated or more specific criminal history calculation.

23           So as the Court indicated at the last hearing, the

24   Court is prepared to grant the government's request to

25   bifurcate the process to do a plea -- acceptance of the

1    plea, consistent with the Rule 11 obligations that the Court

2    has under the terms of Rule 11 and defer its assessment of

3    whether or not to accept the plea agreement until it has a

4    chance to review the PSR.

5           So, Mr. Grimm, you're welcome to have time to

6    discuss all this with your client.  He obviously has

7    concerns that you've been expressing to the Court.

8           I don't feel it would be fair to you or your

9    client for him to have to make that decision today.

10   You might want to reflect on it; you might want to decide

11   how you want to proceed.  But the Court is prepared, when

12   you are ready to, to go forward with a plea agreement.

13          Now, as Rule 11 specifically provides, if he

14   pleads and at a later time I reject the plea agreement, he

15   is free to withdraw the plea, he is free to renegotiate the

16   plea agreement, he's free to go to trial.  So I mean, he has

17   all those options.  Or he can go forward with sentencing on

18   the plea.  So he has all those choices under Rule 11; none

19   of them are changing.  That's what the rule provides.

20          And if you want to discuss it with him and reflect

21   on it, the Court will set -- the Court will wait to hear

22   what you're -- how much time you need.  But I'll set a

23   hearing to take a plea next week or the week after.

24          So you talk to your client, you let me know when

25   you want to -- how you want to proceed.

1          If the decision you make is you do not want to

2    enter a plea, that's fine, he's welcome to not do that too.

3          But if he's not going to enter a plea, then

4    I think you have to move forward, either to renegotiate a

5    plea or to go to the next step in the process, which is, of

6    course, dealing with discovery, dealing with motions,

7    et cetera, et cetera, until such time as the case is

8    resolved.  Obviously, I don't know what's going to happen;

9    I'm not getting in the middle of that.  That's between the

10   parties.

11         So I'd like to hear from you next week whether you

12   want to go forward with a plea or not.  I want to give you

13   at least a few days to think about it and discuss it with

14   your client.

15         MR. GRIMM:  Could I address a timing issue,

16   Your Honor, and approach the bench?

17         I'm sorry.  Approach the bench just ex parte.

18   If the Court wants government counsel, the Court can call

19   them up.  But on a timing issue, if I could address the

20   Court.

21         Once I'm at the bench, the Court will realize why

22   I'm at the bench.

23         THE COURT:  Well, I don't see why government

24   counsel can't be here.  That's --

25         MR. GRIMM:  Then I can't come up.

1           THE COURT:  All right.  I'll hear what you've got

2   to say, Mr. Grimm.

3           Hold on.

4           (Bench conference)

5           MR. GRIMM:

6

7           THE COURT:

8

9           MR. GRIMM:

10

11

12

13

14

15

16

17

18

19          THE COURT:

20

21

22

23          MR. GRIMM:

24

25

```
 1

 2          THE COURT:

 3

 4          MR. GRIMM:

 5

 6          THE COURT:

 7          MR. GRIMM:

 8          THE COURT:

 9          MR. GRIMM:

10

11

12

13

14          THE COURT:

15

16

17          (Open court)

18          THE COURT:  All right, Counsel.  Why don't we look

19   at our calendars to set a control date.

20          And do you have your calendar, Mr. Saler?

21          MR. SALER:  I do, Your Honor.

22          I would ask that it be scheduled on a Friday.

23   I'll be in trial with Judge Howell.

24          THE COURT:  Okay.

25          How about Friday -- would Friday, Mr. Grimm,
```

1    the 23rd, work for you by any chance?

2              MR. GRIMM:  Good date, Your Honor.  Thank you.

3              THE COURT:  That's a good day?

4              MR. GRIMM:  Yes.

5              THE COURT:  All right.

6              Does that work for you, Mr. Saler?

7              MR. SALER:  Yes, Your Honor.

8              THE COURT:  How about 3:30, Counsel?

9              MR. GRIMM:  Yes, Your Honor.

10             THE COURT:  All right.  We'll set it as a control

11   date.

12             And as we move towards that date, Mr. Grimm, if it

13   comes to pass that you think your client wants to go forward

14   with the plea, just let the Court know and let the

15   government know too, obviously, and we will do the plea that

16   day.  And then assuming that that were to occur, then I will

17   set a sentencing date and issue an order to probation to do

18   its pre-PSR, and then I will review the PSR.

19             And then either on the sentencing date or some

20   date prior to that, after both sides have seen the PSR,

21   I will make a decision on whether or not to accept the

22   plea agreement.

23             MR. GRIMM:  Thank you, Your Honor.

24             Your Honor, could the bench matter be placed under

25   seal?

1          THE COURT:  (Nodding head.)

2          MR. GRIMM:  Thank you, sir.

3          THE COURT:  It can.

4          MR. GRIMM:  Thank you.

5          THE COURT:  Very good.

6          Anything else for the government?

7          MR. SALER:  Yes, Your Honor.  Could I just address

8  the speedy trial issue?

9          THE COURT:  Oh, sure.

10          MR. SALER:  There's a specific provision in

11  Section 3161 that says the speedy trial is tolled by any

12  delay resulting from consideration by the Court of a

13  proposed plea agreement to be entered into by the defendant

14  and the attorney for the government.

15          At this point now that Your Honor has stated that

16  the Court is going to first do the guilty plea, the

17  government would request that the Court make a finding that

18  it's in the public interest to toll the Speedy Trial Act

19  between now and the date of the control date so the

20  defendant can consider whether or not he wants to plead.

21          THE COURT:  Very good.

22          Any objection to that, Mr. Grimm?

23          MR. GRIMM:  There's been no speedy trial findings

24  under 3161 past.  So from today forward, I have no objection

25  from tolling it, Your Honor, especially based on the

1    conversation, the colloquy I had with the Court.

2              THE COURT:  Very good.

3              The Court will find in the interest of justice,

4    the Speedy Trial Act will be waived between now and the next

5    hearing in this case, which is set for whatever that date

6    was, that Friday.

7              DEPUTY CLERK:  The 23rd.

8              THE COURT:  October 23rd.

9              Any other issues for the government?

10             MR. SALER:  No, Your Honor.

11             THE COURT:  Any other issues for the defense?

12             MR. GRIMM:  No, Your Honor.

13             THE COURT:  Very good.  Stand in recess.

14             DEPUTY CLERK:  All rise.

15             This Honorable Court now stands in recess until

16   the return of court.

17             (Proceedings concluded at 12:20 p.m.)

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date: October 13, 2015_____   /S/__William P. Zaremba_____

                                William P. Zaremba, RMR, CRR